# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0

1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties."
2  Buyer Name(s) [PLEASE PRINT] **Alexis Hill**
3  Seller Name(s) [PLEASE PRINT] **LONG CAO**
4  If Dual Agency applies, check here ❑ and complete Optional Paragraph 29.

5  **2. THE REAL ESTATE:** Real Estate is defined as the property, all improvements, the fixtures and Personal Property
6  included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with
7  approximate lot size or acreage of _____ commonly known as:
8  **1341 Court Leona**                **Hanover Park**    IL    **60133**    **DuPage**
9  Address              Unit # (If applicable)       City        State    Zip      County
10 Permanent Index Number(s): **0206405042**    ☑ Single Family Attached ❑ Single Family Detached ❑ Multi-Unit
11 **If Designated Parking is Included:** # of space(s) **2**; identified as space(s) # **2**; location **Assigned**
12 [CHECK TYPE] ❑ deeded space, PIN: _____ ❑ limited common element ❑ assigned space.
13 **If Designated Storage is Included:** # of space(s) _____; identified as space(s) # _____; location _____
14 [CHECK TYPE] ❑ deeded space, PIN: _____ ❑ limited common element ❑ assigned space.

15 **3. FIXTURES AND PERSONAL PROPERTY AT NO ADDED VALUE:** All of the fixtures and included Personal Property
16 are owned by Seller and to Seller's knowledge are in operating condition on Date of Acceptance, unless otherwise
17 stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing, and well systems
18 together with the following items at no added value by Bill of Sale at Closing [CHECK OR ENUMERATE APPLICABLE ITEMS]:

19 ☒ Refrigerator            __ Wine/Beverage Refrigerator   ☒ Light Fixtures, as they exist      __ Fireplace Gas Log(s)
20 ☒ Oven/Range/Stove       ☒ Sump Pump(s)                  ☒ Built-in or attached shelving      ☒ Smoke Detectors
21 __ Microwave              __ Water Softener (unless rented) ☒ All Window Treatments & Hardware ☒ Carbon Monoxide Detectors
22 ☒ Dishwasher             ☒ Central Air Conditioning       __ Satellite Dish                    __ Invisible Fence System, Collar & Box
23 ☒ Garbage Disposal        __ Central Humidifier           __ Wall Mounted Brackets (AV/TV)     __ Garage Door Opener(s)
24 __ Trash Compactor        __ Central Vac & Equipment      __ Security System(s) (unless rented)   with all Transmitters
25 ☒ Washer                 ☒ All Tacked Down Carpeting      __ Intercom System                   __ Outdoor Shed
26 __ Dryer                  __ Existing Storms & Screens    __ Electronic or Media Air Filter(s) __ Outdoor Playset(s)
27 __ Attached Gas Grill     __ Window Air Conditioner(s)    __ Backup Generator System           ☒ Planted Vegetation
28 ☒ Water Heater           ☒ Ceiling Fan(s)                 __ Fireplace Screens/Doors/Grates    __ Hardscape

29 **Other Items Included at No Added Value:** _____
30 **Items Not Included:** _____
31 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
32 operating condition at Possession except: _____.
33 A system or item shall be deemed to be in operating condition if it performs the function for which it is intended,
34 regardless of age, and does not constitute a threat to health or safety.
35 If Home Warranty applies, check here ❑ and complete Optional Paragraph 32.

36 **4. PURCHASE PRICE AND PAYMENT:** The Purchase Price is $ **153700**. After the payment of Earnest
37 Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing in
38 "Good Funds" as defined by law.

39  a)  **CREDIT AT CLOSING:** [IF APPLICABLE] Provided Buyer's lender permits such credit to show on the final
40      settlement statement or lender's closing disclosure, **and if not, such lesser amount as the lender permits**, Seller
41      agrees to credit $ **8700** to Buyer at Closing to be applied to prepaid expenses, closing costs or both.
42  b)  **EARNEST MONEY:** Earnest Money of $ **2000** shall be tendered to Escrowee on or before **3**
43      Business Days after Date of Acceptance. Additional Earnest Money, if any, of $ _____ shall be tendered
44      by _____, 20___. Earnest Money shall be held in trust for the mutual benefit of the Parties by

Buyer Initial _AH_  Buyer Initial _____         Seller Initial _____ Seller Initial _LC 12/29/20 10:00 PM EST_
Address: **1341 Court Leona, Hanover Park, IL 60133**                                            07.0

45  [CHECK ONE]: ☑ Seller's Brokerage; ☐ Buyer's Brokerage; ☐ As otherwise agreed by the Parties, as "Escrowee."
46  **In the event the Contract is declared null and void or is terminated, Earnest Money shall be disbursed pursuant to Paragraph 26.**
47     c)  **BALANCE DUE AT CLOSING**: The Balance Due at Closing shall be the Purchase Price, plus or minus
48     prorations, less Earnest Money paid, less any credits at Closing, and shall be payable in Good Funds at Closing.

49  **5. CLOSING**: Closing shall be on **January 26th**, 20 **20** or at such time as mutually agreed by the Parties in
50  writing. Closing shall take place at the escrow office of the title insurance company, its underwriter, or its issuing
51  agent that will issue the Owner's Policy of Title Insurance, whichever is situated nearest the Real Estate.

52  **6. POSSESSION**: Unless otherwise provided in Optional Paragraph 35, Seller shall deliver possession to Buyer at
53  Closing. Possession shall be deemed to have been delivered when Seller and all occupants (if any) have vacated
54  the Real Estate and delivered keys to the Real Estate to Buyer or to the office of the Seller's Brokerage.

55  **7. FINANCING**: [INITIAL ONLY ONE OF THE FOLLOWING SUBPARAGRAPHS a, b, or c]
56  ____ ____ ____ ____ a)  **LOAN CONTINGENCY**: Not later than **forty-five (45) days after Date of Acceptance or five**
57  **(5) Business Days prior to the date of Closing**, whichever is earlier, ("Loan Contingency Date") Buyer shall
58  provide written evidence from Buyer's licensed lending institution confirming that Buyer has received loan
59  approval subject only to "at close" conditions, matters of title, survey, and matters within Buyer's control for a loan
60  as follows: [CHECK ONE] ☑ fixed; ☐ adjustable; [CHECK ONE] ☐ conventional; ☑ FHA; ☐ VA; ☐ USDA;
61  ☐ other _____ loan for **96.5** % of the Purchase Price, plus private mortgage insurance (PMI),
62  if required, with an interest rate (initial rate if an adjustable rate mortgage used) not to exceed **4** % per annum,
63  amortized over not less than **30** years. Buyer shall pay discount points not to exceed **1** % of the loan amount.
64  Buyer shall pay origination fee(s), closing costs charged by lender, and title company escrow closing fees.
65  If Buyer, having applied for the loan specified above, is unable to provide such loan approval and serves Notice to
66  Seller not later than the Loan Contingency Date, this Contract shall be null and void. If Buyer is unable to provide
67  such written evidence not later than the date specified herein or by any extension date agreed to by the Parties,
68  Seller shall have the option of declaring this Contract terminated by giving Notice to Buyer. If prior to the Seller
69  serving such Notice to terminate, Buyer provides written evidence of such loan approval, this Contract shall remain
70  in full force and effect.
71  Upon the expiration of ten (10) Business Days after Date of Acceptance, if Buyer has failed to make a loan
72  application and pay all fees required for such application to proceed and the appraisal to be performed, Seller shall
73  have the option to declare this Contract terminated by giving Notice to Buyer not later than five (5) Business Days
74  thereafter or any extension thereof agreed to by the Parties in writing.
75  **A Party causing delay in the loan approval process shall not have the right to terminate under this**
76  **subparagraph. In the event neither Party elects to declare this Contract terminated as specified above, or as**
77  **otherwise agreed, then this Contract shall continue in full force and effect without any loan contingencies.**
78  **Unless otherwise provided in Paragraph 30, this Contract is not contingent upon the sale and/or closing of**
79  **Buyer's existing real estate.** Buyer shall be deemed to have satisfied the financing conditions of this subparagraph
80  if Buyer obtains a loan approval in accordance with the terms of this subparagraph even though the loan is
81  conditioned on the sale and/or closing of Buyer's existing real estate.
82  If Buyer is seeking FHA, VA, or USDA financing, **required amendments and disclosures shall be attached to this**
83  **Contract.** If VA, the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP), shall be paid by Buyer.

84  ____ ____ ____ ____ b)  **CASH TRANSACTION WITH NO MORTGAGE**: [ALL CASH] If this selection is made, Buyer will pay
85  at Closing, in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer,
86  that Buyer has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above
87  representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to
88  Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds

*Buyer Initial* _____ *Buyer Initial* _____     *Seller Initial* _____ *Seller Initial* _____
*Address*: **1341 Court Leona, Hanover Park, IL 60133**
Page 2 of 13

89  to close. Buyer understands and agrees that, so long as Seller has fully complied with Seller's obligations under this
90  Contract, any act or omission outside of the control of Seller, whether intentional or not, that prevents Buyer from
91  satisfying the Balance Due at Closing, shall constitute a material breach of this Contract by Buyer. The Parties shall
92  share the title company escrow closing fee equally. **Unless otherwise provided in Paragraph 30, this Contract shall**
93  **not be contingent upon the sale and/or closing of Buyer's existing real estate.**

94  ____ ____ ____ ____ c) **CASH TRANSACTION, MORTGAGE ALLOWED:** If this selection is made, Buyer will pay at closing,
95  in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer, that Buyer
96  has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above
97  representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to
98  Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds
99  to close. Notwithstanding such representation, Seller agrees to reasonably and promptly cooperate with Buyer so that
100 Buyer may apply for and obtain a mortgage loan or loans including but not limited to providing access to the Real
101 Estate to satisfy Buyer's obligations to pay the Balance Due at Closing. Such cooperation shall include the performance
102 in a timely manner of all of Seller's pre-closing obligations under this Contract. **This Contract shall NOT be contingent**
103 **upon Buyer obtaining financing.** Buyer understands and agrees that, so long as Seller has fully complied with Seller's
104 obligations under this Contract, any act or omission outside of the control of Seller, whether intentional or not, that
105 prevents Buyer from satisfying the Balance Due at Closing shall constitute a material breach of this Contract by Buyer.
106 Buyer shall pay the title company escrow closing fee if Buyer obtains a mortgage; provided however, if Buyer elects
107 to close without a mortgage loan, the Parties shall share the title company escrow closing fee equally. **Unless otherwise**
108 **provided in Paragraph 30, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing**
109 **real estate.**

110 **8. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
111 [CHECK ONE] ☒ has ☐ has not received a completed Illinois Residential Real Property Disclosure;
112 [CHECK ONE] ☒ has ☐ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home;"
113 [CHECK ONE] ☒ has ☐ has not received a Lead-Based Paint Disclosure;
114 [CHECK ONE] ☒ has ☐ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions;"
115 [CHECK ONE] ☐ has ☒ has not received the Disclosure of Information on Radon Hazards.

116 **9. PRORATIONS:** The requirements contained in this paragraph shall survive the Closing. Proratable items shall
117 be prorated to and including the Date of Closing and shall include without limitation, general real estate taxes,
118 rents and deposits (if any) from tenants; Special Service Area or Special Assessment Area tax for the year of Closing
119 only; utilities, water and sewer, pre-purchased fuel; and Homeowner or Condominium Association fees (and
120 Master/Umbrella Association fees, if applicable). Accumulated reserves of a Homeowner/Condominium
121 Association(s) are not a proratable item.
122     a) The general real estate taxes shall be prorated to and including the date of Closing based on **105** % of
123        the most recent ascertainable full year tax bill. All general real estate tax prorations shall be final as of Closing,
124        except as provided in Paragraph 23. If the amount of the most recent ascertainable full year tax bill reflects a
125        homeowner, senior citizen, disabled veteran or other exemption, a senior freeze or senior deferral, then Seller
126        has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental
127        entity, before or after Closing, to preserve said exemption(s). **The proration shall not include exemptions to**
128        **which the Seller is not lawfully entitled.**
129     b) Seller represents, if applicable, that as of Date of Acceptance Homeowner/Condominium Association(s)
130        fees are $ **231**_____ per **Monthly**_____ (and, if applicable, Master/Umbrella Association fees are
131        $ **Not Applicable** per _____). Seller agrees to pay prior to or at Closing the remaining balance of any
132        special assessments by the Association(s) confirmed prior to Date of Acceptance.

Buyer Initial _[signature]_ Buyer Initial _____   Seller Initial _____ Seller Initial _[LC 12/29/20 10:01 PM EST dotloop verified]_
Address: **1341 Court Leona, Hanover Park, IL 60133**                                                              07.0
Page 3 of 13

133  c) Special Assessment Area or Special Service Area installments due after the year of Closing shall not be
134  proratable items and shall be paid by Buyer, unless otherwise provided by ordinance or statute.

135  **10. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective
136  Parties, by Notice, may:

137  a) Approve this Contract; or
138  b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
139  c) Propose modifications to this Contract, except for the Purchase Price, which proposal shall be conclusively
140  deemed a counteroffer notwithstanding any language contained in any such proposal purporting to state the
141  proposal is not a counteroffer. If after expiration of ten (10) Business Days after Date of Acceptance written
142  agreement has not been reached by the Parties with respect to resolution of all proposed modifications, either
143  Party may terminate this Contract by serving Notice, whereupon this Contract shall be immediately deemed
144  terminated; or
145  d) Offer proposals specifically referring to this subparagraph d) which shall not be considered a counteroffer.
146  Any proposal not specifically referencing this subparagraph d) shall be deemed made pursuant to
147  subparagraph c) as a modification. If proposals made with specific reference to this subparagraph d) are not
148  agreed upon, **neither** Buyer nor Seller may declare this contract null and void, and this contract shall remain
149  in full force and effect.

150  **If Notice of disapproval or proposed modifications is not served within the time specified herein, the**
151  **provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force**
152  **and effect. If Notice of termination is given, said termination shall be absolute and the Contract rendered null**
153  **and void upon the giving of Notice, notwithstanding any language proffered by any Party purporting to permit**
154  **unilateral reinstatement by withdrawal of any proposal(s).**

155  **11. WAIVER OF PROFESSIONAL INSPECTIONS:** [*INITIAL IF APPLICABLE*] ____ ____ ____ ____ Buyer acknowledges
156  the right to conduct inspections of the Real Estate and hereby waives the right to conduct any such inspections of
157  the Real Estate, and further agrees that the provisions of Paragraph 12 shall not apply.

158  **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** [*NOT APPLICABLE IF PARAGRAPH 11 IS INITIALED*]
159  Buyer may conduct at Buyer's expense (unless payment for such expense is otherwise required by governmental
160  regulation) any or all of the following inspections of the Real Estate by one or more licensed or certified inspection
161  services: home, radon, environmental, lead-based paint, lead-based paint hazards or wood-destroying insect
162  infestation, or any other inspections desired by Buyer in the exercise of reasonable due diligence. Seller agrees to
163  make all areas of the Real Estate accessible for inspection(s) upon reasonable notice and to have all utilities turned
164  on during the time of such inspections. Buyer shall indemnify Seller and hold Seller harmless from and against
165  any loss or damage caused by any acts of Buyer or any person performing any inspection on behalf of Buyer.

166  a) The request for repairs shall cover only the major components of the Real Estate, limited to central heating
167  and cooling system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings,
168  floors, appliances and foundation. A major component shall be deemed to be in operating condition, and
169  therefore not defective within the meaning of this paragraph, if it does not constitute a current threat to health
170  or safety, and performs the function for which it is intended, regardless of age or if it is near or at the end of its
171  useful life. Minor repairs, routine maintenance items and painting, decorating or other items of a cosmetic
172  nature, no matter the cost to remedy same, do not constitute defects, are not a part of this contingency and shall
173  not be a basis for the Buyer to cancel this Contract. **A request by Buyer for credits or repairs in violation of**
174  **the terms of this subparagraph shall allow Seller to declare this Contract terminated and direct the return**
175  **of Buyer's Earnest Money.** If radon mitigation is performed, Seller shall pay for any retest.

Buyer Initial _____ Buyer Initial _____     Seller Initial _____ Seller Initial _____
Address: **1341 Court Leona, Hanover Park, IL 60133**

| | |
|---|---|
|176| b) Buyer shall serve Notice upon Seller or Seller's attorney of any major component defects disclosed by any|
|177| inspection for which Buyer requests resolution by Seller within five (5) Business Days (ten (10) calendar days|
|178| for a lead-based paint or lead-based paint hazard inspection) after Date of Acceptance. **Buyer shall not send**|
|179| **any portion of the inspection report with the Notice provided under this subparagraph unless such**|
|180| **inspection report, or any part thereof, is specifically requested in writing by Seller or Seller's attorney.** If|
|181| after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by|
|182| the Parties with respect to resolution of all inspection issues, either Party may terminate this Contract by|
|183| serving Notice to the other Party, whereupon this Contract shall be immediately deemed terminated.|
|184| c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection|
|185| reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller within|
|186| five (5) Business Days after Date of Acceptance, this Contract shall be null and void. Said Notice shall not|
|187| include any portion of the inspection reports unless requested by Seller.|
|188| d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a**|
|189| **waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain**|
|190| **in full force and effect.**|

191 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
192 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
193 Days after Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice with proof**
194 **of same to Seller within the time specified, this Contract shall be null and void. If Notice is not served within**
195 **the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in**
196 **full force and effect.**

197 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
198 located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to**
199 **Seller within ten (10) Business Days after Date of Acceptance or by the Loan Contingency Date, whichever is**
200 **later, Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
201 Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

202 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** [*IF APPLICABLE*] The Parties agree that the terms
203 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting
204 terms, and shall apply to property subject to the Illinois Condominium Property Act and the Common Interest
205 Community Association Act or other applicable state association law ("Governing Law").

| | |
|---|---|
|206| a) Title when conveyed shall be good and merchantable, subject to terms and provisions of the Declaration of|
|207| Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all amendments; public and|
|208| utility easements including any easements established by or implied from the Declaration/CCRs or|
|209| amendments thereto; party wall rights and agreements; limitations and conditions imposed by the Governing|
|210| Law; installments due after the date of Closing of general assessments established pursuant to the Declaration/CCRs.|
|211| b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for|
|212| all special assessments confirmed prior to Date of Acceptance.|
|213| c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between|
|214| Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement relative to|
|215| payment thereof. Absent such agreement either Party may declare the Contract null and void.|
|216| d) Seller shall, within ten (10) Business Days from Date of Acceptance, apply for those items of disclosure|
|217| upon sale as described in the Governing Law, and provide same in a timely manner, but no later than the time|
|218| period provided for by law. This Contract is subject to the condition that Seller be able to procure and provide|
|219| to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to purchase created by the|

Buyer Initial _____ Buyer Initial _____     Seller Initial _____ Seller Initial _____
                                                                                    12/29/20
                                                                                    10:01 PM EST
Address: **1341 Court Leona, Hanover Park, IL 60133**                              dotloop verified
                                                                                    07.0

220 Declaration/CCRs. In the event the Condominium Association requires the personal appearance of Buyer or
221 additional documentation, Buyer agrees to comply with same.
222 e) In the event the documents and information provided by Seller to Buyer disclose that the existing
223 improvements are in violation of existing rules, regulations or other restrictions or that the terms and
224 conditions contained within the documents would unreasonably restrict Buyer's use of the Real Estate or
225 would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
226 Buyer may declare this Contract null and void by giving Notice to Seller within five (5) Business Days after the
227 receipt of the documents and information required by this paragraph, listing those deficiencies which are
228 unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have waived
229 this contingency, and this Contract shall remain in full force and effect.
230 f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

231 **16.   THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
232 merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
233 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
234 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to:
235 covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not
236 interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and payable
237 at the time of Closing.

238 **17.   MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
239 a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
240 closing inspection or disclosure requirement, municipal Transfer Tax or other similar ordinances. Cost of
241 transfer taxes, inspection fees, and any repairs required by an inspection pursuant to municipal ordinance shall
242 be paid by the Party designated in such ordinance unless otherwise agreed to by the Parties.
243 b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
244 Revenue Code, the Foreign Investment in Real Property Tax Act (FIRPTA), and the Real Estate Settlement
245 Procedures Act of 1974, as amended.

246 **18.   TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
247 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
248 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a
249 title company licensed to operate in the State of Illinois, issued on or subsequent to Date of Acceptance, subject
250 only to items listed in Paragraph 16 and shall cause a title policy to be issued with an effective date as of Closing.
251 The requirement to provide extended coverage shall not apply if the Real Estate is vacant land. The commitment
252 for title insurance furnished by Seller will be presumptive evidence of good and merchantable title as therein
253 shown, subject only to the exceptions therein stated. **If the title commitment discloses any unpermitted**
254 **exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to**
255 **Buyer, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title**
256 **insurer commit to either insure against loss or damage that may result from such exceptions or survey matters**
257 **or insure against any court-ordered removal of the encroachments.** If Seller fails to have such exceptions waived
258 or insured over prior to Closing, Buyer may elect to take title as it then is with the right to deduct from the Purchase
259 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish to Buyer at Closing an Affidavit
260 of Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
261 Insurance Policy.

262 **19.   PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
263 condominium, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms

Buyer Initial _____   Buyer Initial _____      Seller Initial _____   Seller Initial _____

Address: **1341 Court Leona, Hanover Park, IL 60133**